UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FATHIREE ALI, ANTHONY
HOFFMAN, ROMMEL
MORSHED,

     Plaintiffs,

v.

WASHINGTON *et al.*,

     Defendants.

_____/

Case No. 25-10846

Nancy G. Edmunds
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

**REPORT AND RECOMMENATION TO DENY PLAINTIFFS' MOTIONS
FOR INJUNCTIVE RELIEF (ECF Nos. 5, 16)**

## I.  PROCEDURAL HISTORY

  Plaintiffs Fathiree Ali, Anthony Hoffman, and Rommel Morshed filed this

*pro se* action during Ramadan 2025, and the Court docketed the case on March 26,

2025.  (ECF No. 1).  With their complaint, Plaintiffs also filed an emergency

motion for an *ex parte* temporary restraining order ("TRO") "and/or" preliminary

injunction against all Defendants and their counsel.[1]  (ECF No. 5).  On April 9,

2025, the District Court referred all pretrial matters to the undersigned.  (ECF No.

---

[1] Defendants are Heidi Washington, the Director of the Michigan Department of
Corrections ("MDOC"); Adrian Dirchell, the Special Acts Coordinator for MDOC; Fredeane
Artis, the warden at Thumb Correctional Facility; Ora Carter, Assistant Deputy Warden at
Thumb; Katy SanMiguel, the Food Service Director at Thumb; and Blair, the Chaplain at
Thumb.  (ECF No. 1, PageID.3-4, ¶¶ 12-17).  Plaintiffs also name one John Does—a FS
Supervisor—as a Defendant.  (*Id.* at PageID.1).

13). And on April 29, 2025, Plaintiffs filed a "motion to amend" their motion for injunctive relief which the undersigned will treat as its own motion for injunctive relief. (ECF No. 16). So far, all of this has occurred without service of process upon the named Defendants. (ECF No. 15 (indicating that the United States Marshals Service received service of process documents on April 28, 2025)).

Having reviewed Plaintiffs' complaint and their motions for injunctive relief, the undersigned **RECOMMENDS** that each motion be **DENIED**.

## II.    BACKGROUND

Plaintiffs are prisoners in the custody of the Michigan Department of Corrections ("MDOC") who are incarcerated at Thumb Correctional Facility. (ECF No. 1, PageID.1). All Plaintiffs are Muslims who devoutly observe the holy month of Ramadan and the post-Ramadan feast, Eid-ul-Fitr. (*Id.* at PageID.5, ¶ 22). During Ramadan, worshippers like Plaintiffs fast between dawn and sunset (Maghrib). (*Id.* at PageID.4, ¶ 20). According to Plaintiffs, their faith requires them "to eat halal meals[,] commence their fast with three dates and water, and each evening hasten to break the fast with three dates and water." (*Id.* at PageID.5, ¶ 22). This year, Ramadan started on March 1, 2025 and ended around sunset on March 30, 2025. (*Id.* at ¶ 20).

Because of Defendants' allegedly unlawful actions, Plaintiffs claim that they could not adhere to the tenets of their faith and observe Ramadan as required. For

instance, Plaintiffs' faith mandates that Muslims are to begin their fast in the morning with a Suhoor meal "which includes fruit dates and water, to be consumed before dawn." (*Id.* at PageID.6, ¶ 25). But during the first seven days of Ramadan, the Suhoor meal was allegedly served "only moments before dawn with minimum or no time for food consumption." (*Id.*). At the end of the day, Muslims break their fast with an evening meal, Iftar, which is also supposed to consist of three dates. (*Id.* at ¶ 26). Though Iftar is to be eaten at sunset and not beyond that time, Plaintiffs allege that the evening meal was not served "until hours after the time for fasting had ended." (*Id.*).

Along with the untimely meals, Plaintiffs also claim that Defendants collectively served calorically insufficient meals. (*Id.* at ¶ 27 (alleging that they received fewer than 1500 calories per day)). They allege that Defendants do not provide "meat substitutes for Suhoor meals"; "do not replace spoiled milks, missing items[,] or inedible foods"; and "refuse to provide fruit-dates at any time during Ramadan." (*Id.*). And Plaintiffs allege that their meals are improperly handled and stored as they are purportedly "prepared in an unsanitary backdock area where trash is kept and transported." (*Id.* at PageID.7, ¶ 29).

Plaintiffs also allege that they not only requested that their Ramadan meals be religiously compliant, but they also complained about the above allegations to prison staff. (*Id.* at PageID.5, ¶ 23, PageID.8, ¶¶ 32A-33). Yet their requests for

3

accommodations and relief were either denied or unanswered as the alleged
conduct persisted.  (*Id.* at PageID.5, ¶ 23, PageID.8, ¶¶ 32A-33).  As a result of
Defendants' alleged conduct, Plaintiffs assert that they have suffered "severe
emotion[al] distress, hunger pangs, anxiety, starvation, headaches, weight loss,
weakness[,] and fatigue" as well as "religious indignity, humiliation, and
embarrassment[.]"  (*Id.* at PageID.9, ¶ 37).  They also allege violations of their
civil liberties.  (*Id.*).

Considering Ramadan's brevity, Plaintiffs filed this lawsuit pursuing
monetary, injunctive, and declaratory relief for alleged violations of the Religious
Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc *et seq.*
("RLUIPA"); the First, Eighth, and Fourteenth Amendments; and Article I, Section
4 of the Michigan Constitution.  (*Id.* at PageID.1).

Plaintiffs also filed an emergency motion for a TRO and preliminary
injunction with their complaint.  (ECF No. 5).  There, Plaintiffs moved for
emergency injunctive relief to "compel[ ] Defendants to supply timely, adequate
nutrition and fruit-dates to [Plaintiffs] and all Muslims who are fasting during
Ramadan until March 30, 2025."  (*Id.* at PageID.46; *see also id.* at PageID.49
("Plaintiffs seek[ ] a temporary restraining order to immediately correct the
nutritional deficiencies for the remainder of Ramadan, and order Defendants' to
deliver timely adequate and halal religiously compatible meals with fruit dates to

4

[Plaintiffs].").  To that end, Plaintiffs only moved for injunctive relief on their
RLUIPA claim.  (*Id.*).

In that motion, Plaintiffs allege much of the same conduct in their
complaint—that is, Defendants served untimely Suhoor and Iftar meals that were
calorically insufficient and improperly handled and stored.  (*Id.* at PageID.46-49).
They do add, however, that the Iftar meals were served late during the first
fourteen days of Ramadan.  (*Id.* at PageID.47).  As the Suhoor meals were also
untimely for the first seven days of Ramadan, (*id.*), the only food Plaintiffs
received for the first week of Ramadan consisted primarily of the late Iftar meals.

On April 29, 2025, Plaintiffs filed a "motion to amend" their previous
motion for injunctive relief.  (ECF No. 16).  The undersigned will treat this as a
separate, independent motion for injunctive relief.[2]  In this motion, Plaintiffs claim
that Defendants collectively retaliated against Plaintiffs for filing their lawsuit in

---

[2] There is some confusion on the nature of this motion.  Though it is titled as a "Motion
to Amend Emergency Motion for Temporary Restraining Order and/or Preliminary Injunction,"
Plaintiffs refer to this filing as a "pleading."  (ECF No. 16, PageID.93).  They also formatted the
motion with numbered paragraphs—something Plaintiffs did not do with their first motion for
injunctive relief.  Even so, Plaintiffs did not call this filing a motion to amend the complaint or
cite Rule 15.  Nor did Plaintiffs follow this Court's Local Rule for filing amended pleadings
which requires the party moving for the amendment to "reproduce the entire pleading as
amended . . . ."  E.D. Mich. LR 15.1.  And many allegations in this filing lodge claims against
non-party prison staff generally and do not identify the allegedly improper actions of each
particular Defendant.  (ECF No. 16, PageID.92 (claiming that unknown prison staff retaliated
against Plaintiffs, alleging that "Defendant" served uncooked black bean burgers without
identifying which Defendant did so, and naming one Defendant (Blair) in one instance).  Since it
is unclear whether Plaintiffs intended to amend their pleadings with this filing, the undersigned
will take the title of the motion at its word and treat it as a motion offering a second, alternative
basis for emergency injunctive relief.

several ways in violation of the First Amendment.  (*Id.* at PageID.91).  Plaintiffs

also seemingly contend that the alleged post-complaint conduct constituted

violations of the First Amendment's Free Exercise Clause as well as the Eighth and

Fourteenth Amendments.[3]  (*Id.* at PageID.93).  They assert that that they were

served uncooked bean burgers and that non-party correctional officers laughed and

said "guess you shouldn't file lawsuits."  (*Id.* at PageID.92).  Plaintiffs also argue

that prison staff have deprived them and other Muslims of their ability to conduct

their Friday afternoon prayer service, Jumu'ah, in favor of Christian events in the

same space.  (*Id.*).  Prison staff also allegedly deprived Plaintiffs of an Islamic

study group.  (*Id.*).  Additionally, Plaintiffs have purportedly been told that the

complaint was a "bad move" and that they will be transferred to a different facility

where they will have less privileges; Defendant Blair has sent Plaintiff Ali a Notice

of Intent to deprive him of his religious property; and Defendants have purportedly

authorized donations for Christian and Jewish inmates but denied similar donations

for Muslim inmates.  (*Id.* at PageID.92-93).

## III.   ANALYSIS AND RECOMMENDATION

---

[3] Plaintiffs only cite a string of Sixth Circuit and Supreme Court cases before concluding that Defendants post-complaint conduct "burden[ed] the Plaintiffs['] religious practices, discriminate[d], punish[ed], and/or deter[red] them from bringing this matter."  They do not explicitly articulate whether the alleged conduct violated the Free Exercise Clause, Eighth Amendment, and Fourteenth Amendment.  Plaintiffs also do not expressly claim that that post-complaint conduct comprises its own independent RLUIPA violation.

Both of Plaintiffs' motions for injunctive relief suffer from fatal defects and should be **DENIED**.  The first motion for injunctive relief should be denied because it is moot now that Ramadan has come to an end.  And to the extent that motion requests injunctive relief beyond Ramadan, the motion relies on conduct not alleged in the complaint and lacks the sort of immediate, irreparable harm needed to warrant injunctive relief.  The second motion for injunctive relief should be denied because (1) it does not satisfy procedural requirements for an *ex parte* TRO; and (2) it rests on conduct unrelated to that alleged in the complaint.[4]

Federal Rule of Civil Procedure 65 governs injunctions and TROs.  The decision to grant or deny injunctive relief falls solely within the discretion of the district court.  *See Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir.

---

[4] In their complaint and motions for injunctive relief, Plaintiffs spend a great deal of time discussing the exhaustion of administrative remedies required under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).  (ECF No. 1, PageID.2-3, ¶ 8; ECF No. 5, PageID.50-52; ECF No. 16, PageID.91).  Previously, this Court observed that "[t]he Sixth Circuit has not addressed whether a prisoner may request a preliminary injunction or TRO before exhausting his or her administrative remedies, and federal courts are divided on this issue." *Johnson v. Blessman*, No. 2:20-cv-10147, 2022 U.S. Dist. LEXIS 62091, at *18 (E.D. Mich. Jan. 26, 2022), *report and recommendation adopted*, 2022 U.S. Dist. LEXIS 61209 (E.D. Mich. Mar. 31, 2022).  As far as the undersigned can discern, the legal landscape in this Circuit has not changed.  That said, this Court has assessed whether plaintiffs have properly exhausted administrative remedies in factually analogous circumstances.  *See Owens v. Scheutte*, No. 2:24-cv-10787, 2024 WL 1349305, at *2-3 (E.D. Mich. Mar. 29, 2024) (assessing whether plaintiff exhausted remedies related to claims about untimely and calorically insufficient Ramadan meals on a motion for an *ex parte* TRO).  Notwithstanding *Owens*, the undersigned does not address the exhaustion issue in this Report and Recommendation because Plaintiffs' motions should be denied on other grounds.  The Supreme Court has held that exhaustion under the PLRA is an affirmative defense, not a pleading requirement.  *See Jones v. Bock*, 549 U.S. 199, 216 (2007).  Thus, Defendants can raise the exhaustion issue when it is more appropriate to do so.

2008).  The moving party bears the burden of demonstrating entitlement to

injunctive relief which is "an extraordinary remedy which should be granted only

if the movant carries his or her burden of proving that circumstances clearly

demand it.  *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573

(6th Cir. 2002).  *See also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24

(2008) (remarking that a preliminary injunction is "never awarded as of right").

For the Court to issue an *ex parte* TRO without prior notice to the non-

moving party—such as what Plaintiffs have requested—the moving party must

clear certain procedural hurdles.  Pursuant to Rule 65(b)(1) such relief is

permissible only if:

> (A) specific facts in an affidavit or a verified complaint clearly show
> that immediate and irreparable injury, loss, or damage will result
> to the movant before the adverse party can be heard in opposition;
> and
>
> (B) the movant's attorney certifies in writing any efforts made to give
> notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1)(A)-(B).

It is also the moving party's burden to satisfy the substantive criteria for

injunctive relief.  District courts assess four factors when determining whether to

grant a preliminary injunction:

> (1) whether the movant has a strong likelihood of success on the
> merits; (2) whether the movant would suffer irreparable injury absent
> the injunction; (3) whether the injunction would cause substantial

> harm to others; and (4) whether the public interest would be served by
> the issuance of an injunction.

*Wilson v. Williams*, 961 F.3d 829, 836 (6th Cir. 2020) (internal quotation and

citation omitted).  Although no single factor controls this analysis, the likelihood of

success on the merits is often the predominant consideration.  *See Stryker Emp.*

*Co., LLC v. Abbas*, 60 F.4th 372, 386 (6th Cir. 2023) ("[A] finding that there is

simply no likelihood of success on the merits is usually fatal." (internal quotation

and citation omitted)).  As mentioned, Plaintiffs—as the movants—bear the burden

of establishing their entitlement to injunctive relief; this means they bear the

burden of establishing the likelihood of success on the merits of their claims.

*Wilson*, 961 F.3d at 837 (citing *Certified Restoration Dry Cleaning Network,*

*L.L.C. v. Tenke Corp.*, 511 F.3d 535, 546 n.2 (6th Cir. 2007)).  Yet even if the

movant shows a likelihood of success on the merits, the movant is not necessarily

entitled to injunctive relief.  *See Benisek v. Lamone*, 585 U.S. 155, 158 (2018) (per

curiam).

In the Sixth Circuit, courts examine the same factors when "determining

whether to issue a TRO or preliminary injunction."  *See Brunner*, 543 F.3d at 361.

Thus, district courts apply the same analysis for a temporary restraining order as it

would for a preliminary injunction.  *See id.* (evaluating a TRO on appeal in relation

to the four injunction factors).

A.    Plaintiffs' First Motion for Injunctive Relief (ECF No. 5)

1.    <u>Emergency *Ex Parte* TRO</u>

Though Plaintiffs' first motion satisfies the procedural requirements for an *ex parte* TRO,[5] this motion should be denied as moot.

Plaintiffs expressly moved for a TRO to stop Defendants' allegedly unlawful conduct and compel them to provide religiously compliant and calorically sufficient meals *for the remainder of Ramadan*.  (ECF No. 5, PageID.46 (asking for "timely, adequate nutrition and fruit dates [for Plaintiffs] and all other Muslims who are fasting until March 30, 2025"), PageID.49 (asking for emergency injunctive relief to "immediately correct nutritional deficiencies *for the remainder of Ramadan*") (emphasis added)).  Ramadan ended on March 30, 2025.  Accordingly, the Court can no longer craft an injunctive remedy compelling Defendants to take corrective actions in the past.

---

[5] Though directed at attorneys, the procedural requirements under Rule 65(b)(1) "apply equally to pro se litigants."  *Taylor-Bey v. Deangelo*, No. 23-11958, 2024 WL 482236, at *3 (E.D. Mich. Jan. 12, 2024) (citing *Spencer v. Donohue*, No. 5680810, 2019 WL 5680810, at *2 (E.D. Mich. Aug. 30, 2019), *report and recommendation adopted*, 2019 WL 4254085 (E.D. Mich. Sept. 9, 2019)).  Pursuant to Rule 65(b)(1)(A), Plaintiffs' motion must be based on specific facts set forth in an affidavit or verified complaint.  A verified complaint is one signed under the penalty of perjury.  *See El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) (identifying plaintiff's complaint as verified because he signed it "under penalty of perjury pursuant to 28 U.S.C. § 1746").  As Plaintiffs did exactly that, their complaint is a verified complaint.  (ECF No. 1, PageID.17).  And Plaintiffs certified, in writing, their efforts to give notice to Defendants and why notice should not be required here thereby satisfying Rule 65(b)(1)(B).  (ECF No. 5, PageID.43 ("Plaintiffs have provided notice to the Office of the [State] Attorney General, and to representative[s] . . . detailed in the [Plaintiffs'] attached Declaration[s] . . . .  Defendants have not yet responded. But, [Plaintiffs] cannot wait.").  Plaintiffs could not wait because of Ramadan's short duration.  (*Id.* at PageID.42-44).

This Court recently addressed this issue on a different procedural posture in *Owens v. Schuette*, No. 2:24-cv-10787, 2024 WL 4469086 (E.D. Mich. Oct. 10, 2024) (denying injunctive relief for a RLUIPA claim on a motion to dismiss).[6] There, plaintiff raised closely analogous claims as those raised here. He asserted that defendants provided untimely morning and evening meals during Ramadan that were calorically insufficient. *Id.* at *2. Plaintiff also claimed that the food was "improperly handled or stored, rendering them inedible." *Owens v. Schuette*, No. 2:24-cv-10787, 2024 WL 1349305, at *1 (E.D. Mich. Mar. 29, 2024) (evaluating the same facts on plaintiff's emergency motion for an *ex parte* TRO). Just like Plaintiffs here, plaintiff in *Owens* moved for emergency injunctive relief based on a RLUIPA claim "to compel [d]efendants to supply timely and adequate nutrition to [p]laintiff." *Owens*, 2024 WL 4469086, at *2.

The *Owens* Court ultimately denied plaintiff's motion for a preliminary injunction and dismissed his claims for injunctive relief because Ramadan had ended. *Id.* at *4-6.[7] Federal courts only have limited jurisdiction over "cases" and

---

[6] Plaintiff in *Owens* filed an appeal solely on "the Court's opinion on the availability of Money Damages under [RLUIPA] against all Defendants in their official capacities and against [certain individual defendants] in their individual capacities." *Owens v. Schuette*, No. 24-cv-10787, ECF No. 28, PageID.716 (E.D. Mich. Nov. 11, 2024). Plaintiff did not appeal the denial of his motion for a preliminary injunction, nor did he appeal the Court's decision mooting his claims for injunctive relief.

[7] The Court denied the motion for a preliminary injunction, "finding such relief unwarranted." *Owens v. Schuette*, No. 24-cv-10787, ECF No. 17, PageID.283 (E.D. Mich. Apr. 4, 2024).

"controversies" as delineated in the Constitution.  U.S. Const. art. III, § 2.  *See also*

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992).  To ensure federal

courts do not exceed the bounds of their jurisdiction, those litigating in federal

court must have standing under Article III to do so.  *See id.* at 560-61 (articulating

the elements of Article III standing); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338

(2016).  "While standing ensures that a plaintiff has a personal stake in the

outcome of litigation, mootness 'is akin to saying that, although an actual case or

controversy once existed, changed circumstances have intervened to destroy

standing.'"  *Owens*, 2024 WL 4469086, at *4 (quoting *Sumpter v. Wayne Cnty*,

868 F.3d 473, 490 (6th Cir. 2017).  Accordingly, "mootness is a jurisdictional

question," *In re Flint Water Cases*, 63 F.4th 486, 497 (6th Cir. 2023) (citing *Lewis*

*v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)), since federal courts "lack

jurisdiction to consider a case or issue that has lost its character as a present, live

controversy . . . ."  *Id.* at 498 (internal quotations omitted).

Since Ramadan had ended by the time the *Owens* Court assessed Plaintiffs'

claims for injunctive relief, the Court dismissed them as moot.  *Owens*, 2024 WL

4469086, at *1, 4-6 (ruling on the motion to dismiss on October 10, 2024 after

Ramadan ended "on or about April 9th or 10th, 2024").  Other district courts have

also concluded that motions for injunctive relief to compel corrective actions

during Ramadan are moot once Ramadan ends.  *See, e.g.*, *England v. Foster*, No.

12

13-cv-00188, 2014 U.S. Dist. LEXIS 179076 (D. Nev. Oct. 28, 2014), *report and recommendation adopted*, 2015 U.S. Dist. LEXIS 76 (D. Nev. Jan. 2, 2015); *Barros v. Wetzel*, No. 1:14-cv-01746, 2015 U.S. Dist. LEXIS 130638 (M.D. Pa. Sept. 29, 2015), *adopting report and recommendation*, 2015 U.S. Dist. LEXIS 133013 (M.D. Pa. Aug. 5, 2015). The same outcome is warranted here. "'Without a time machine,' the Court cannot force Defendants to do anything or prohibit Defendants from doing anything that injured Plaintiff.'" *Owens*, 2024 WL 4469086, at *4 (quoting *Thompson v. DeWine*, 7 F.4th 521, 524 (6th Cir. 2021)). As Ramadan 2025 has ended, Plaintiffs' motion for emergency *ex parte* TRO is moot and should be denied.

The undersigned acknowledges that this Court in *Owens* granted plaintiff's motion for an emergency TRO. *Owens*, 2024 WL 1349305, at *3-4. The crucial distinction, however, is that the *Owens* Court addressed the TRO *during Ramadan*. The Court's ruling was filed on March 29, 2024, and Ramadan that year started on March 9 and ended around April 9. *Id.* at *1. But as explained above, the claims for injunctive relief were moot since the Court ruled on that issue *after* Ramadan ended. *See also England*, 2014 U.S. Dist. LEXIS 179076, at *5-7; *Barros*, 2015 U.S. Dist. LEXIS 130638, at *1-2. In this case, Plaintiffs' first motion for injunctive relief was referred to the undersigned on April 9, 2025, and Ramadan

ended on March 30, 2025.  As a result, Plaintiffs' emergency TRO motion is now moot.

There is an exception to mootness that applies in "exceptional situations" involving issues that are "'capable of repetition, yet evading review.'" *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170 (2016) (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998) (cleaned up).  An issue is not moot only if "'(1) the challenged action is in its duration too short to be fully litigated to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again.'"  *United States v. Sanchez-Gomez*, 584 U.S. 381, 391 (2018) (quoting *Turner v. Rogers*, 564 U.S. 431, 439-40 (2011)).  "'The party asserting that this exception applies bears the burden of establishing both prongs.'"  *Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 559-60 (6th Cir. 2021) (quoting *Lawrence v. Blackwell*, 430 F.3d 368, 371 (6th Cir. 2005)).

Here, there is no briefing on whether the exception to mootness applies. Even so, *Owens* is instructive.  In *Owens*, this Court found that Ramadan's one-month duration easily satisfied the first prong to the mootness exception.  *Owens*, 2024 WL 4469086, at *5.  *See also In re Flint Water Cases*, 53 F.4th at 189 (citing Supreme Court precedent finding periods of twelve months, eighteen months, and two years sufficient to satisfy the mootness exception's first prong).  But plaintiff

in *Owens* failed to satisfy the second prong because he could not show that he would be at the same facility during Ramadan the following year in order to experience the same alleged constitutional violations.  *Id.*  Citing Sixth Circuit precedent, the *Owens* Court held that it could only "'speculate'" that plaintiff would be at the same facility for Ramadan the next year, and such speculation was not enough to satisfy plaintiff's burden.  *Id.* at *5-6 (quoting *Sumpter*, 868 F.3d at 491)).[8]

The same reasoning on the second prong to the mootness exception applies here.  The undersigned does not know how long each Plaintiff will be incarcerated at Thumb Correctional Facility, whether they will be released between now and Ramadan in 2026, or whether one or all will be transferred to a different MDOC facility.  In their second motion for injunctive relief, Plaintiffs even suggest that one form of the alleged unconstitutional retaliation they face is the possibility of a transfer to a more restrictive MDOC facility.[9]  (ECF No. 16, PageID.91).  Of

---

[8] Plaintiffs in *Owens* and *Sumpter* were no longer at the local jail where the alleged unlawful conduct occurred when the federal courts addressed mootness.  *Owens*, 2024 WL 4469086, at *1-2; *Sumpter*, 868 F.3d at 478-79, n.1.  Though Plaintiffs here are still incarcerated at Thumb Correctional Facility, this distinction is not sufficient to warrant a different outcome.  Whether plaintiffs in *Owens* and *Sumpter* returned to the same local jail requires the same degree of speculation as to whether all Plaintiffs here will still be incarcerated at Thumb Correctional Facility during Ramadan 2026.  *See England v. Foster*, 2014 U.S. Dist. LEXIS 179076, at *6-7 (concluding that plaintiff's claims about experiencing similar injuries when observing Ramadan in the future will depend on where "plaintiff might be housed at the time").

[9] In fact, Plaintiffs recognize that their "RLUIPA claims can only survive as long as each of them remain at Thumb Correctional Facility."  (ECF No. 16, PageID.94).

course, it could be possible that one or all Plaintiffs will still be incarcerated at Thumb Correctional Facility for Ramadan 2026.  All this is to say that the undersigned can only "speculate" as to whether Plaintiffs may be subjected to the same allegedly unconstitutional Ramadan practices next year.  And as explained in *Owens*, speculation is not enough to satisfy the second prong to the mootness exception.  *See also England*, 2014 U.S. Dist. LEXIS 179076, at *6-7 ("Finally, and relatedly, possible denials of group prayer space during future Ramadan holidays will likely feature unique circumstances, including the particular prison at which plaintiff might be housed at the time.  Therefore, consideration of plaintiff's present motion [for injunctive relief], even if it concerned future Ramadan periods, is improper.").

For these reasons, Plaintiffs' first motion for an emergency *ex parte* TRO should be **DENIED** as it is moot and does not fall into the mootness exception.

2.    Motion for Preliminary Injunction

Plaintiffs' motion also asked for a preliminary injunction.  At times, Plaintiffs describe their desired preliminary injunction as limited to the rest of Ramadan.  (ECF No. 5, PageID.46 (requesting "a temporary restraining order and/or preliminary injunction compelling Defendants to supply timely, adequate nutrition and fruit-dates to [Plaintiffs] and all Muslims who are fasting *during Ramadan until March 30, 2025*" (emphasis added)).  But in other instances,

Plaintiffs ask that the preliminary injunction be extended beyond Ramadan. (*Id.* at PageID.50 (requesting a preliminary injunction that "last[s] through the pendency of this litigation, including during the subsequent months of Ramadan if necessary."), PageID.57 ("The Court should thus order that [Plaintiffs] and other Muslims be provided the full daily allotment of kosher meals as an adequate halal diet, both for each day of Ramadan *and beyond*." (emphasis added)).

To the extent that Plaintiffs' motion for a preliminary injunction is limited to Ramadan 2025, the motion should be denied as moot for the same reasons stated above. *See supra* Subsection III.A.1. To the extent that Plaintiffs' ask for injunctive relief beyond Ramadan, the motion for a preliminary injunction should be denied on its merits. Not only does Plaintiffs' motion request injunctive relief for conduct outside the scope of the complaint—thereby precluding a showing of success on the merits of the claims raised in the complaint—but it also lacks the sort of immediate injury needed to warrant a preliminary injunction.

As the likelihood of success on the merits is typically dispositive, the undersigned starts there. This factor asks district courts to examine whether the movant will succeed on the merits of the claims *in the complaint*. "'[A] party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint.'" *Annabel v. Frost*, No. 17-2263, 2018 WL 5295887, at *2 (6th Cir.

Aug. 10, 2018) (quoting *Colvin v. Caruso*, 605 F.3d 282, 300 (6th Cir. 2010)
(internal quotation omitted)).  *See also England*, 2014 U.S. Dist. LEXIS 179076, at
*4-5 (denying plaintiff's motion for injunctive relief because, in addition to being
moot, it sought relief for "conduct outside the scope of the complaint").  As a
result, Plaintiffs' claims about untimely, calorically insufficient, and improperly
prepared Ramadan meals cannot result in a Court Order compelling Defendants to
alter Plaintiffs post-Ramadan meals, especially when Plaintiffs have not alleged
unlawful conduct related to pre- or post-Ramadan meals in their complaint.

   Plaintiffs' briefing underscores this issue because it focuses exclusively on
how Defendants' conduct with respect to the Ramadan meals obstructed their
observance of Ramadan and violated RLUIPA.  (ECF No. 5, PageID.52-55).  That
said,  nothing touches on why this Court should compel Defendants to take certain
actions regarding post-Ramadan meals.  Without claims of unlawful conduct
related to post-Ramadan meals in the complaint, the Court cannot grant injunctive
relief compelling Defendants to take curative actions regarding such meals.  As
Plaintiffs' complaint—including the RLUIPA claim on which they move for
injunctive relief—focuses on allegedly unconstitutional practices regarding
Ramadan meals, injunctive relief can be tailored only toward Ramadan meals.

   At bottom, Plaintiffs cannot show the likelihood of success on the merits of
claims that do not appear in the complaint.  As the complaint focuses entirely on

Ramadan meals, Plaintiffs cannot obtain preliminary injunctive relief that extends beyond Ramadan and affects post-Ramadan meals.

Separate but relatedly, the motion for a preliminary injunction is also deficient on the second injunction factor. For the Court to issue a preliminary injunction Plaintiffs must show "whether the movant would suffer irreparable injury absent the injunction." *Wilson*, 961 F.3d at 836 (internal quotation and citation omitted). This injury "'must be both certain and immediate,' not 'speculative or theoretical.'" *D.T. v. Sumner Cnty Schools*, 942 F.3d 324, 327 (6th Cir. 2019) (quoting *Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991)).

Plaintiffs' RLUIPA claim concerns Ramadan meals in 2025. But Ramadan is now over. Assuming Plaintiffs all remain at Thumb Correctional Facility until Ramadan in 2026, the alleged harms would not be inflicted on Plaintiffs for nearly another year. Stated simply, the harm alleged to stem from Defendants' allegedly unlawful conduct regarding Ramadan meals in 2025 is no longer immediate. Without the threat of an irreparable and *immediate* injury, a preliminary injunction is improper and cannot issue. *See Barros v. Wetzel*, 2015 U.S. Dist. LEXIS 130638, at *2 (finding plaintiff's claims related to his Ramadan observance to be moot because Ramadan had ended, so "[p]laintiff [could not] show that he will be injured with the requisite immediacy to warrant a preliminary injunction at this

time, because the resolution of this case before the next observance of Ramadan would suffice to protect [p]laintiff's interests").

Since Plaintiffs' motion for a preliminary injunction asks for relief based on conduct outside the scope of the complaint and an immediate, irreparable injury is now lacking, the motion should be **DENIED**.[10]

In all, the undersigned **RECOMMENDS** that Plaintiffs' first motion for injunctive relief be **DENIED**.

B.    Plaintiffs' Second Motion for Injunctive Relief (ECF No. 16)

The second motion for an emergency TRO and preliminary injunction should also be denied.  While this motion is not moot as it involves conduct alleged to have occurred after Ramadan and after Plaintiffs filed their complaint, it still suffers from procedural and substantive deficiencies.

Though Plaintiffs' first motion for an *ex parte* TRO is procedurally proper, the second motion is not.  As explained, Rule 65(b)(1)(B) requires the movant to certify in writing any efforts to give notice and explain why notice should not be required.  Plaintiffs explained that they contacted the State Attorney General's office and other representatives about their first motion for injunctive relief and

---

[10] The undersigned does not read Plaintiffs' first motion for an *ex parte* TRO to request injunctive relief beyond Ramadan.  But should it do so, the motion should be denied for the same reasons.  As mentioned, district courts in the Sixth Circuit apply the same four factors when assessing TROs and preliminary injunctions on the merits.  The express language of Rule 65(b)(1)(A) also requires the alleged threatened harm be both "*immediate* and irreparable."  Fed. R. Civ. P. 65(b)(1)(A) (emphasis added).

that they could not wait for a response because of Ramadan's brevity.  No such assurance or certification was made in Plaintiffs' second motion for injunctive relief.  So while the Attorney General's Office and others were made aware of the Plaintiffs' claim for emergency injunctive relief for an alleged RLUIPA violation, the same individuals were not notified of this second motion and the grounds for injunctive relief raised therein until Plaintiffs filed the motion and mailed it to the State Attorney General.  (ECF No. 16, PageID.102).  For failing to satisfy Rule 65(b)(1)'s procedural requirements, the motion for an emergency *ex parte* TRO should be denied.

Apart from this procedural defect, the motions for a TRO and preliminary injunction are substantively defective on the merits.  As mentioned, there must be some connection between the claims raised in the motion for injunctive relief and the conduct asserted in the complaint.  *See Annabel*, 2018 WL 5295887, at *2; *Colvin*, 605 F.3d at 300.  After all, the purpose of a preliminary injunction is to "'preserve the relative positions of the parties until a trial on the merits can be held.'"  *Abbas*, 60 F.4th at 382 (quoting *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)).  And "TROs have the modest purpose of preserving the status quo to give a court time to determine whether a preliminary injunction is warranted."  *A&W X-Press, Inc. v. FCA US, LLC*, 2022 WL 2759872, at *3 (6th

Cir. July 14, 2022) (citing *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 650 (6th Cir. 1993)).

Plaintiffs' second motion for injunctive relief is predicated on the alleged unconstitutional retaliation they have faced since filing the complaint. Naturally, the complaint could not have raised such claims as the purportedly unlawful conduct did not occur until after Plaintiffs filed the complaint. Thus, there is not the requisite relationship between the claims raised in Plaintiffs' motion and the conduct alleged in the complaint needed for the Court to grant the requested injunctive relief. So Plaintiffs' second motion for both a TRO and preliminary injunction should be **DENIED**.

## IV. CONCLUSION

For the above reasons, the undersigned **RECOMMENDS** that Plaintiffs' motions for injunctive relief be **DENIED**.

The parties here may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections lack merit, it may rule without awaiting the response.

Date:  May 6, 2025.                              s/Curtis Ivy, Jr.
                                                 Curtis Ivy, Jr.
                                                 United States Magistrate Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System or by First Class U.S. mail on May 6, 2025.

<u>s/Sara Krause</u>
Case Manager
(810) 341-7850