UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FATHIREE ALI, *et al.*,

                    Plaintiffs,

v.

WASHINGTON, *et al.*,

                    Defendants.

_____/

Case No. 25-10846

Nancy G. Edmunds
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

**REPORT AND RECOMMENATION ON DEFENDANTS'
MOTION TO DISMISS (ECF No. 29) AND TO DISMISS JOHN DOE**

Plaintiffs Fathiree Ali, Anthony Hoffman, and Rommel Morshed filed this

*pro se* action during Ramadan 2025, and the Court docketed the case on March 26,

2025.  (ECF No. 1).  Plaintiffs named as Defendants various Michigan Department

of Corrections ("MDOC") officials and employees, namely:  Heidi Washington,

the Director of MDOC; Adrian Dirchell, the Special Acts Coordinator for MDOC;

Fredeane Artis, the warden at Thumb Correctional Facility ("TCF"); Ora Carter,

the Assistant Deputy Warden at TCF; Katy SanMiguel, TCF's Food Service

Director; and Blair, the Chaplain at TCF. (ECF No. 1, PageID.3–4, ¶¶ 12–17).[1]

Plaintiffs also named one John Doe—a "FS Supervisor"—as a Defendant.  (*Id.* at

_____

[1] Plaintiffs sued Washington, Dirchell, Carter, and Blair in their individual and official capacities; they did not specify as to Defendants Artis and SanMiguel.

PageID.1). The District Court referred all pretrial matters to the undersigned. (ECF No. 13).

Pending before the Court is Defendants Washington, Dirschell, Artis, Carter, SanMigeul, and Blair's *Motion to Dismiss* (ECF No. 29). The motion is fully briefed. (ECF Nos. 29, 32, 34).[2] The undersigned **RECOMMENDS** that Defendants' motion be **GRANTED**. The undersigned **FURTHER RECOMMENDS** that the John Doe Defendant be dismissed as well.

## I.    BACKGROUND

Plaintiffs are prisoners in the custody of the MDOC who are incarcerated at TCF. (ECF No. 1, PageID.1). All Plaintiffs are Muslims who devoutly observe the holy month of Ramadan and the post-Ramadan feast, Eid-ul-Fitr. (*Id.* at PageID.5, ¶ 22). During Ramadan, worshippers like Plaintiffs fast between dawn and sunset (Maghrib). (*Id.* at PageID.4, ¶ 20). According to Plaintiffs, their faith requires them "to eat halal meals[,] commence their fast with three dates and water, and each evening hasten to break the fast with three dates and water." (*Id.* at PageID.5, ¶ 22). In 2025, Ramadan started on March 1, 2025, and ended around sunset on March 30, 2025. (*Id.* at ¶ 20).

---

[2] The undersigned does not consider the arguments set forth in Plaintiffs' sur-reply for the reasons stated in the Order filed concurrently with this Report and Recommendation.

Because of Defendants' allegedly unlawful actions, Plaintiffs claim that they could not adhere to the tenets of their faith and observe Ramadan as required. For instance, Plaintiffs' faith mandates that Muslims are to begin their fast in the morning with a Suhoor meal "which includes fruit dates and water, to be consumed before dawn." (*Id.* at PageID.6, ¶ 25). But during the first seven days of Ramadan, the Suhoor meal was allegedly served "only moments before dawn with minimum or no time for food consumption." (*Id.*). At the end of the day, Muslims break their fast with an evening meal, Iftar, which is also supposed to consist of three dates. (*Id.* at ¶ 26). Though Iftar is to be eaten at sunset and not beyond that time, Plaintiffs allege that the evening meal was not served "until hours after the time for fasting had ended." (*Id.*).

Along with the untimely meals, Plaintiffs also claim that Defendants collectively served calorically insufficient meals. (*Id.* at ¶ 27 (alleging that they received fewer than 1500 calories per day)). They allege that Defendants do not provide "meat substitutes for Suhoor meals"; "do not replace spoiled milks, missing items[,] or inedible foods"; and "refuse to provide fruit-dates at any time during Ramadan." (*Id.*). And Plaintiffs allege that their meals are improperly handled and stored as they are purportedly "prepared in an unsanitary backdock area where trash is kept and transported." (*Id.* at PageID.7, ¶ 29).

Plaintiffs also allege that they not only requested that their Ramadan meals be religiously compliant, but they also complained about the above allegations to prison staff. (*Id.* at PageID.5, ¶ 23, PageID.8, ¶¶ 32A–33). Yet their requests for accommodations and relief were either denied or unanswered as the alleged conduct persisted. (*Id.* at PageID.5, ¶ 23, PageID.8, ¶¶ 32A–33). As a result of Defendants' alleged conduct, Plaintiffs assert that they have suffered "severe emotion[al] distress, hunger pangs, anxiety, starvation, headaches, weight loss, weakness[,] and fatigue" as well as "religious indignity, humiliation, and embarrassment[.]" (*Id.* at PageID.9, ¶ 37).

Plaintiffs further alleged that the treatment they have received is less favorable than other similarly situated inmates. (*Id.* at PageID.7, ¶ 32). They claim that "MDOC purchases prepackaged meals and packaged almonds for the Jewish annual observance of Passover." (*Id.*). Likewise, they claim that "Thumb administrators" authorized funds for non-ceremonial foods and a three-day retreat for Christian inmates. (*Id.*). They further assert that Catholics receive authorized purchases of crackers and juice (e.g., the "eucharist") for Communion. (*Id.*). To that end, Plaintiff alleges that they are "singled out for such treatment solely because of their beliefs" and are forced to choose between adherence to their faith or the health risks associated with malnutrition. (*Id.*).

4

In all, Plaintiffs claim that Defendants "individually or collectively" deprive them of their ability to practice their religion in violation of federal and state law. (*Id.* at PageID.8, ¶ 34).

Considering Ramadan's brevity and the alleged violations of their civil liberties, Plaintiffs filed this lawsuit pursuing monetary, injunctive, and declaratory relief for alleged violations of the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc *et seq.* ("RLUIPA"); the First, Eighth, and Fourteenth Amendments; and Article I, Section 4 of the Michigan Constitution.  (*Id.* at PageID.1).  Plaintiffs also moved for emergency injunctive relief which the Court denied.  (ECF Nos. 5, 16, 18, 26).

On June 23, 2025, Defendants Washington, Dirschell, Artis, Carter, SanMiguel, and Blair moved to dismiss Plaintiffs' claims against them under Federal Rule of Civil Procedure 12(b)(6) for failure to exhaust administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e *et seq.* (ECF No. 29).  In response, Plaintiffs assert that they did not have to exhaust their administrative remedies before filing their lawsuit because any such remedies were unavailable to them.  The undersigned concurs with Defendants.

## II.    LEGAL STANDARDS

### A.    Rule 12(b)(6)

"[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd. P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

The Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Yet even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976–77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). "[C]ourts may not rewrite a complaint to include claims that were never presented .

6

. . nor may courts construct the Plaintiff's legal arguments for him.  Neither may the Court 'conjure up unpled allegations[.]'" *Rogers v. Detroit Police Dep't*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.); *see also, Evans v. Mercedes Benz Fin. Servs., LLC*, No. 11-11450, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) (Cohn, J.) ("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).").

Though Rule 12(b)(6) motions are typically limited to the plaintiff's complaint, the Court can also consider exhibits attached to the Complaint, "public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).  And pursuant to Federal Rule of Evidence 201(b), the Court can take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." *See United States v. Allstate Ins. Co.*, 620 F. Supp. 3d 674, 684 (E.D. Mich. 2022) (citation omitted).  That said, taking judicial notice of "public documents is proper only for the fact of the documents'

existence, and not for the truth of the matters asserted therein." *Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Sup. Ct.*, 894 F.3d 235, 245 (6th Cir. 2018) (citation modified).

A Rule 12(b)(6) motion to dismiss can also be predicated "on an affirmative defense if the complaint's allegations (or any other documents [the Court] may consider at this stage) show as a matter of law that the defense applies." *See VCST Int'l B.V. v. BorgWarner Noblesville, LLC*, 142 F.4th 393, 400 (6th Cir. 2025) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)); *see also Bushong v. Delaware City Sch. Dist.*, 851 F. App'x 541, 545 (6th Cir. 2021) ("Because the failure to exhaust is an affirmative defense, dismissal under Rule 12(b)(6) or 12(c) is appropriate only if the face of the complaint shows that the plaintiff has not exhausted her administrative remedies."); *Est. of Barney v. PNC Bank, Nat. Ass'n*, 714 F.3d 920, 926 (6th Cir. 2013) (citing *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009)); *Anderson v. Jutzy*, 175 F. Supp. 3d 781, 786–87 (E.D. Mich. 2016); 5B Wright & Miller's Federal Practice & Procedure § 1357 (4th ed. Sept. 2025 Update) ("[T]he complaint also is subject to dismissal under Rule 12(b)(6) when its allegations indicate the existence of an affirmative defense that will bar the award of any remedy."). Since Defendants bear the burden to establish the affirmative defense, the "complaint need not plead factual allegations to

8

plausibly avoid an affirmative defense." *VCST Int'l B.V.*, 142 F.4th at 399 (citations omitted).

## B.      Exhaustion under the PLRA

Under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e *et seq.*, a prisoner may not bring an action "with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Congress enacted the provision to address the "outsized share" of prisoner litigation filings and to ensure that "the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit." *Jones*, 549 U.S. at 203–04. Put another way, the purpose of § 1997e(a) is to "reduce the quantity and improve the quality of prisoner suits[.]" *Porter v. Nussle*, 534 U.S. 516, 524 (2002). In addition, exhaustion "gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotation marks and citation omitted).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211. The prison's grievance process determines when a prisoner has properly exhausted his or her claim. *Id.* at 218 ("The level of detail necessary in a grievance to comply

9

with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."). Even where a prisoner has made some attempts to go through the prison's grievance process, "[t]he plain language of the statute makes exhaustion a precondition to filing an action in federal court." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999).

The prisoner "may not exhaust administrative remedies during the pendency of the federal suit." *Id.* (citations omitted); *see also Woodford*, 548 U.S. at 95 ("A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction. . . ."). That said, "the PLRA and Federal Rule of Civil Procedure 15 permit a plaintiff to amend his complaint to add claims that were exhausted after the commencement of the lawsuit, provided that the plaintiff's original complaint contained at least one fully exhausted claim." *Mattox v. Edelman*, 851 F.3d 583, 595 (6th Cir. 2017).

Furthermore, "inmates are not required to specifically plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. Instead, failure to exhaust administrative remedies is an affirmative defense under the PLRA. *Id.* As a result, defendants bear the burden of proof on exhaustion. *Surles v. Andison*, 678 F.3d

10

452, 456 (6th Cir. 2012) ("A PLRA defendant bears the burden of proving that a PLRA plaintiff has not exhausted his administrative remedies.").

"[T]he PLRA's exhaustion requirement is a strict rule." *Does 8–10 v. Snyder*, 945 F.3d 951, 962 (6th Cir. 2019).  But "the PLRA contains its own, textual exception to mandatory exhaustion." *Ross v. Blake*, 578 U.S. 632, 642 (2016).  This exception applies when administrative remedies are not "available." *Id.* (quoting 42 U.S.C. § 1997e(a)).  In essence, "an inmate must only exhaust available remedies" before filing in federal court, "not unavailable ones." *Lamb v. Kendrick*, 52 F.4th 286, 293 (6th Cir. 2022) (citing *Ross*, 578 U.S. at 642). According to the Supreme Court, administrative remedies are unavailable in three instances:

> (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it" because it is "so opaque" or "so confusing"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Id.* (quoting *Ross*, 578 U.S. 643–44).  And even in the event that administrative remedies were unavailable before initiating litigation, "this Circuit requires inmates to make 'affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable.'" *Id.*

(quoting *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015)); *see also Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 223 (6th Cir. 2011).

### C.     MDOC's Grievance Procedures

As an initial matter, Defendants included a link to the relevant MDOC policy in their principal brief and requested that the Court take judicial notice of this policy. (ECF No. 29, PageID.159 n.2). Plaintiffs did not object to Defendants' request. And in any event, judicial notice would be proper here. Accordingly, the undersigned will consider the MDOC grievance policy.

Pursuant to Policy Directive 03.02.130, the administrative grievance procedure in place in March 2025 was as follows. MDOC PD 03.02.130, Prisoner/Parolee Grievances, https://perma.cc/3HBT-ZZMN (last visited Feb. 19, 2026). First, the inmate must attempt to resolve issues with the staff member involved within two business days of becoming aware of a grievable issue. If the issues are not resolved within five business days, the inmate may file a Step I grievance using the appropriate form. Unless an extension is granted, MDOC will respond to a Step I grievance within fifteen business days of receipt of the grievance. If the issue raised in the grievance is of an emergent nature, the Grievance Coordinator can order a Step I response within two business days. If the inmate is dissatisfied with the Step I disposition or does not receive a response by ten business days after the due date, he or she may file a Step II grievance using

12

the appropriate form.  A Step II grievance will be issued within fifteen business days of receipt of the Step II grievance unless an extension is granted.  Similarly, if the inmate is dissatisfied with the Step II response or does not receive a response by ten business days after the due date, the inmate may file a Step III grievance.  Ordinarily, a Step III response will be issued within sixty business days.  The matter is fully exhausted after the disposition of the Step III grievance.  *Surles*, 678 F.3d at 455 ("A grievant must undertake all steps of the MDOC process for his grievance to be considered fully exhausted.").

## III.   DISCUSSION

To fully exhaust administrative remedies before Plaintiffs filed their Complaint on March 15, 2025,[3] they each would have needed to receive responses to Step III grievances.  In their Complaint, Plaintiffs state that they each filed a Step I grievance based on the claims raised in their pleading and that "their direct requests for immediate relief" did not receive a response or were otherwise ignored.  (ECF No. 1, PageID.3, ¶ 8).  Since there was no avenue for emergency relief and Defendants' conduct was allegedly burdening Plaintiffs' ability to practice their religion while also subjecting them to starvation and

---

[3] Pursuant to the prison mailbox rule, Plaintiffs' Complaint is deemed filed the date they handed their pleading over to prison staff to be mailed; absent evidence to the contrary, "a prisoner does so on the date he or she signed the complaint." *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008).

malnourishment, Plaintiffs filed their Complaint and moved for emergency injunctive relief before receiving responses to their Step I grievances.  (*Id.*).  To that end, Plaintiffs suggested that MDOC's administrative grievance procedure was a "dead end" because it caused them to "spin[ ] [their] wheels" for two weeks without getting anywhere.  (*Id.*).

Defendants contend that it is clear from the face of the Complaint that Plaintiffs did not exhaust their administrative remedies before filing this case.  For one thing, assuming Plaintiffs filed their Step I grievances on March 1, the first day of Ramadan 2025, Defendants insist that it was all but impossible for them to receive a Step III grievance response before filing on March 15.  (ECF No. 29, PageID.166, 169–70).  For another, Defendants point out that Plaintiffs practically admitted that they filed their case before exhausting their administrative remedies.  (*Id.* at PageID.165).  And to the extent that Plaintiffs believed their efforts were for nought in light of the emergent nature of their concerns, Defendants cite mandatory authority from the Sixth Circuit holding that full exhaustion is still required under the PLRA even if Plaintiffs subjectively believe their administrative remedies are unavailable.  (*Id.* at PageID.168–69).

Plaintiffs counter Defendants' assertions on various grounds.  While they acknowledge that they filed their Complaint without receiving a Step III grievance response, they argue that this was permissible because their administrative

remedies were unavailable under the PLRA.  (ECF No. 32, PageID.182) (indicating that Plaintiffs filed before receiving responses to their Step I grievances and that Plaintiffs Ali and Morshed did proceed past Step I of the grievance process).  First, they argue that "[i]nmates are not required to 'spin their wheels' when grievance procedures cannot provide timely relief."  (*Id.* at PageID.182). Second, they assert that each one of them was directed to the Warden's Forum at some point, a body that is not a part of MDOC's grievance process—an action which resulted in prison staff thwarting Plaintiffs' respective efforts to exhaust their administrative remedies.  (*Id.* at PageID.182–83).  And third, Plaintiffs contend that the Supreme Court's recent decision in *Perttu v. Richards*, 605 U.S. 460 (2025), held that the issue of exhaustion in this case must be presented to a jury for resolution.  (*Id.* at PageID.183).[4]  The undersigned will address each of these contentions in turn.

As an initial matter, however, Plaintiffs' response brief included their Step I grievances and the responses they received—responses that were either issued or returned to Plaintiffs after they filed their Complaint.  (*Id.* at PageID.204–16) (indicating that Plaintiff Hoffman's Step I grievance received a response in April 2025 and that Plaintiffs Ali and Morshed received their Step I responses on March

---

[4] For the rest of their brief, Plaintiffs argue that they stated plausible claims for relief. (ECF No. 32, PageID.184–89).  Since Defendants' motion to dismiss focuses solely on the exhaustion issue, the undersigned will focus only on the arguments related to the exhaustion.

18, 2025).  Plaintiffs also included their own sworn declarations detailing their efforts to exhaust their administrative remedies.  (*Id.* at PageID.190–200).  They also included declarations from Michael Adkins, a representative that served on the Warden's Forum, and Anthony Latham, a prisoner representative to whom Plaintiff Ali communicated with about the civil rights violations alleged in the Complaint.  (*Id.* at PageID.201–03, 217–19).  Critically, none of these documents were included with Plaintiffs' Complaint.

Though Plaintiffs provided their grievance documents and sworn declarations, "the Court cannot consider exhibits to a response brief on a motion to dismiss."  *Homrich v. City of Wyoming*, 800 F. Supp. 3d 801, 818 (W.D. Mich. 2025) (citing *In re Fair Fin. Co.*, 834 F.3d 651, 656 n.1 (6th Cir. 2016)); *see also Qiu v. Bd. of Educ. of Oldham Cnty. Schs, Ky.*, No. 3:22-CV-284-DJH-CHL, 2024 WL 5428994, at *3 (W.D. Ky. Mar. 20, 2024) ("[A] court generally may not consider documents attached in response to a motion to dismiss as they are merely matters outside of the pleadings.") (citation modified).  Neither party invoked Rule 12(d) nor asked the Court to convert the motion into one for summary judgment. Though the Court itself may convert a Rule 12(b)(6) motion into a Rule 56 motion, the Sixth Circuit instructs that sua sponte conversion "should be exercised with caution and attention to the parties' procedural rights."  *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 487 (6th Cir. 2009) (citation modified).  And

under that Rule, "it is within t[he] Court's discretion whether to convert a motion to dismiss into a motion for summary judgment." *Wallace Sales & Consulting, LLC v. Tuopo N. Am., Ltd.*, No. 2:15-CV-10748, 2015 WL 4509349, at *2 (E.D. Mich. July 24, 2015).[5]

Here, the undersigned will not sua sponte convert Defendants' motion to dismiss into one for summary judgment under Rule 56.  Though Plaintiffs included dozens of pages of exhibits to their response brief, they did not ask the Court to assess the motion under Rule 56; indeed, Plaintiffs recited the standard for a Rule 12(b)(6) motion to dismiss.  (ECF No. 32, PageID.178–79).  And neither party articulated nor applied Rule 56's standard of review on this issue.  *See Wallace Sales & Consulting, LLC*, 2015 WL 4509349, at *2 (electing not to convert a motion to dismiss under Rule 12(d) because neither party requested conversion, the parties relied on the Rule 12(b)(6) standard of review, and neither party assessed the motion under Rule 56).  And ultimately conversion would not aid Plaintiffs unavailability argument since their grievance documents show that they did not

---

[5] Sua sponte conversion under Rule 12(d) also requires the Court to provide notice and an opportunity to respond to the non-movant so he can come forward with his own evidence.  *See Tackett*, 561 F.3d at 487.  In other words, "[w]here one party is likely to be surprised by [converting the motion to dismiss to a motion for summary judgment], notice is required. *Salehpour v. Univ. of Tennessee.*, 159 F.3d 199, 204 (6th Cir. 1998).  Even so, "an appeals court will reverse for failure to notify only if the losing party can 'demonstrate prejudice.'" *Tackett*, 561 F.3d at 487 (citing *Yashon v. Gregory*, 737 F.2d 547, 552 (6th Cir. 1984)); *see also Wilkes v. Nat'l Credit Union Admin. Bd.*, Case No. 15-CV-11389, 2015 WL 7889049, at *1 n.1 (E.D. Mich. Dec. 4, 2015) (elaborating on where the lack of notice would not constitute surprise to the parties).

17

receive Step I grievance responses until *after* they filed their Complaint.  Since the exhaustion requirement and its exception focus on the availability of administrative remedies *before* the complaint is filed, it follows that Plaintiffs cannot rely on developments occurred *after* filing their Complaint in support of an unavailability argument.

Applying Rule 12(b)(6), the undersigned now assesses Plaintiffs' arguments in opposition of Defendants' motion to dismiss.

### 1.    Exigent Circumstances

Plaintiffs' principal argument is that they had to act in the absence of a Step I grievance response because otherwise the infringement of their civil rights would continue all while Ramadan neared its end.  In other words, Plaintiffs' position is that their administrative remedies were unavailable because they could not obtain the relief they sought before Ramadan ended, consequently creating an emergency in which they could not cease the alleged infringement of their rights.  On this point, Plaintiffs say that MDOC's grievance process amounted to a dead end. Citing to a case from this District, they contend that inmates need not "spin their wheels" when grievance procedures cannot produce timely relief.  (ECF No. 32, PageID.182) (citing *Owens v. Scheutte*, No. 2:24-cv-10787, 2024 WL 1349305, at *2–3 (E.D. Mich. Mar. 29, 2024)).

Plaintiffs are mistaken as a matter of law. "[T]here is no exception to the PLRA's exhaustion requirement for exigent circumstances." *Scouten v. Midland Cnty.*, No. 21-2953, 2022 U.S. App. LEXIS 7533, at *3 (6th Cir. Mar. 22, 2022) (rejecting argument that the PLRA's exhaustion requirement should be set aside because of the COVID-19 pandemic); *see also Boulding v. Michigan Dep't of Corr.*, No. 13-14325, 2015 WL 136195, at *2 (E.D. Mich. Jan. 6, 2015) ("The PLRA does not contain an exception to the exhaustion requirement for 'exigent circumstances,' be they medical exigencies *or otherwise*.") (emphasis added), *report and recommendation adopted*, 2015 WL 1510446 (E.D. Mich. Mar. 24, 2015). Likewise, Plaintiffs' concern for their physical health does not permit them to circumvent the PLRA's exhaustion requirement. *See Arbuckle v. Bouchard*, 92 F. App'x 289, 291 (6th Cir. 2004) ("The PLRA does not excuse exhaustion for prisoners under imminent danger of serious physical injury."); *Lentz v. Michigan Dep't of Corr.*, No. 2:24-CV-10198, 2025 WL 1023709, at *6 (E.D. Mich. Jan 15, 2025) (citing *Arbuckle*, 92 F. App'x at 291), *report and recommendation adopted*, 2025 WL 817425 (E.D. Mich. Mar. 14, 2025).[6]

---

[6] And as Defendants pointed out, exhaustion under the PLRA is "required even if the prisoner subjectively believes the remedy is not available . . . even when the state cannot grant the particular relief requested . . . and even where the prisoners believe the procedure to be ineffectual or futile." *Napier*, 636 F.3d at 222 (citation modified).

19

So regardless of any exigent circumstances stemming from the alleged infringement of Plaintiffs' ability to practice their religion or the alleged physical side-effects of their purported malnourishment, Plaintiffs had to fully exhaust their administrative remedies before filing their Complaint.  As they did not do so, their claims should be dismissed under the PLRA for failure to exhaust.

The decision in *Owens* on which Plaintiffs rely does not command a conclusion to the contrary.  In that case, the plaintiff moved for emergency injunctive relief under closely analogous circumstances—that is, he claimed that defendants provided untimely morning and evening meals during Ramadan that were calorically insufficient and consisted of improperly handled or stored foods. 2024 WL 1349305, at *1.  On the exhaustion issue, the plaintiff argued that his administrative remedies were unavailable because the grievance procedure at the jail where he was housed "d[id] not offer a timeframe for relief and d[id] not offer an emergency grievance procedure." *Id.* at *3.  The plaintiff also included an affidavit reflecting emails and telephone calls that were sent to prison officials on the plaintiff's behalf in an effort to resolve his complaints before the end of Ramadan. *Id.*  Considering Ramadan's duration, the *Owens* Court concluded that "[i]nmates are not required to spin their wheels seeking administrative remedies while the time during which they could enjoy any relief ticks away." *Id.*  Thus, it deemed administrative remedies unavailable since the plaintiff had spent two

20

weeks trying to correct the issues and no emergency grievance procedure was available to expedite his concerns. *Id.*

Plaintiffs, however, do not account for context and the *Owens* Court's later decision on the exhaustion issue. The decision they rely on stems from a motion for an emergency *ex parte* temporary restraining order—a matter which the Court ruled on without the benefit of adversarial briefing. Notably, the Court did not identify which of the three grounds identified in *Ross* rendered the administrative remedies unavailable. This context seems integral to the exhaustion issue because when the *Owens* Court addressed the issue on a later motion to dismiss (which the Court declined to convert into a Rule 56 motion), it again concluded that the plaintiff's administrative remedies were unavailable but for a different reason. After receiving full briefing, the Court noted that the grievance process was a "dead end" because prison staff would not provide the necessary grievance form despite the plaintiff's requests for one. *See Owens v. Schuette*, Case No. 2:24-cv-10787, 2024 WL 4469086, at *9 (E.D. Mich. Oct. 10, 2024). This was especially so in the eyes of the Court because of the four-step grievance process at issue and the absence of an emergency grievance procedure. *Id.* Therefore, the Court ultimately concluded that the plaintiff's administrative remedies were unavailable to him because he could not formally initiate the process to even try and remedy his complaints.

Armed with the full context of the exhaustion issue in the *Owens* litigation, it is clear that this case is distinguishable.  The question of exhaustion is before the Court on a motion to dismiss, not on a motion for emergency injunctive relief. And unlike in *Owens*, each Plaintiff was able to file a Step I grievance and formally initiate the grievance process.  More importantly, *Owens* did not address the Sixth Circuit's observation that the PLRA does not provide exceptions for exigent circumstances or the imminent threat of serious physical injury—authority Plaintiffs do not address in their briefing.

At bottom, neither exigent circumstances, the risk of physical harm, nor *Owens* excuses Plaintiffs from their failure to fully exhaust their administrative remedies as required under the PLRA.[7]

### 2.      Warden's Forum

Plaintiffs' second argument is that MDOC rendered their administrative remedies unavailable because prison staff directed Hoffman, Ali, and Morshed to the Warden's Forum at some point.  (ECF No. 32, PageID.183).  But this position is unavailing.

---

[7] As mentioned in the Report and Recommendation on Plaintiffs' motion for emergency injunctive relief, "[t]he Sixth Circuit has not addressed whether a prisoner may request a preliminary injunction or TRO before exhausting his or her administrative remedies, and federal courts are divided on this issue." *Johnson v. Blessman*, No. 2:20-CV-10147, 2022 WL 1055456, at *6 (E.D. Mich. Jan. 26, 2022), *report and recommendation adopted*, 2022 WL 976969 (E.D. Mich. Mar. 31, 2022).

22

The Warden's Forum is a body to which prisoners may challenge the content of a prison policy or procedure. *See Berryman v. Haas*, No. 19-1484, 2020 WL 6325553, at \*2 (6th Cir. May 11, 2020). The Sixth Circuit, albeit in an unpublished order, noted that the Warden's Forum is not the proper body for exhausting an inmate's administrative remedies under MDOC policy for allegedly unconstitutional conditions of confinement. *See id.*; *see also Bailey v. Washington*, 784 F. Supp. 3d 997, 1003 (E.D. Mich. 2025) (citing *Berryman*, 2020 WL 6325553, at \*2) ("But Plaintiffs could not have exhausted their administrative remedies through the warden's forum."). In *Bailey v. Washington*, this Court concluded that referring inmates to the Warden's Forum operates as a "dead end" that renders administrative remedies unavailable. 784 F. Supp. 3d at 1018 ("MDOC officials stymy the prisoners' efforts to get relief either through the grievance system or in court.").[8]

Citing to the Sixth Circuit's order in *Berryman*, Plaintiff Hoffman argues that Defendant Blair and unknown "FS Supervisors" directed him to the Warden's Forum thereby thwarting his efforts to exhaust his administrative remedies. But as

---

[8] The specific issue was MDOC's practice of rejecting grievances as "joint grievances" when "two or more prisoners and/or parolees have jointly filed a single grievance regarding an issue of mutual impact or submit identical grievances regarding a given issue as an organized protest." *Bailey*, 784 F. Supp. 3d at 1015 (internal quotations omitted). MDOC would then direct the grievant to the Warden's Forum. In *Bailey*, this provision of MDOC policy was referred to as "¶ J7." Under the version of MDOC's grievance policy applicable here, this provision can now be found at ¶ P7.

23

Plaintiffs alleged in their Complaint, "Ali, Hoffman, and Morshed each did file Step I grievances on the claims presented [in their Complaint]." (ECF No. 1, PageID.3, ¶ 8). So while Hoffman was directed at some point to the Warden's Forum, he had also filed a Step I grievance as required under MDOC policy. Thus, MDOC staff did not thwart Hoffman's efforts to exhaust his administrative remedies. If anything, staff referred Hoffman to another avenue for possible relief while MDOC processed his Step I grievance.

Plaintiffs Ali and Morshed rely on *Bailey* to argue that their administrative remedies were unavailable when they filed their Complaint. They argue that their Step I grievances were both rejected under the "joint filing" rule the Court rebuked in *Bailey* and similarly referred to the Warden's Forum. While Ali and Morshed may very well be right with respect to *Bailey*'s applicability to their case, they notably rely on the responses they received to their Step I grievances—responses they did not have before they filed their Complaint. Indeed, the whole reason why Plaintiffs could not wait to file their Complaint was because of the emergent nature of their claims, not that MDOC's joint filing rule obstructed their ability to exhaust their administrative remedies. (*Id.*).

The PLRA requires inmates to exhaust their administrative remedies *before* filing their claims in court. Of course, inmates need not exhaust administrative remedies that are unavailable to them *before* filing their case. It follows that an

24

inmate's administrative remedies must be unavailable *before* an inmate can bring his lawsuit for the exception to the PLRA's exhaustion requirement to apply. Here, Plaintiffs rely on information that was only made available to them after they filed their Complaint. In other words, Ali and Morshed had no basis to conclude that their administrative remedies were unavailable based on the joint filing rule before they submitted their pleading to the Court. Thus, their reliance on *Bailey* is no more than a *post hoc* rationalization for skipping around the PLRA's exhaustion requirement. Without receiving some response to their grievances before they filed, Plaintiffs had no reason to believe that MDOC staff had thwarted their ability to navigate MDOC's grievance policy at the time of filing. In doing so, Plaintiff's contravened the PLRA's strict instruction that they must wait to file their case until they have fully exhausted the administrative remedies available to them *before* initiating their lawsuit. *See* 42 U.S.C. § 1997e(a); *Ross*, 578 U.S. at 642.

Accordingly, the Court should not excuse Plaintiffs' failure to exhaust their administrative remedies based on the referrals to the Warden's Forum or their rejection under the "joint filing" rule.

        3.     <u>*Perttu v. Richards*, 605 U.S. 460 (2025)</u>

Finally, Plaintiffs insist that the Supreme Court's decision in *Perttu*—which was decided on June 18, 2025, more than three months after Plaintiffs' filed their Complaint—precludes the Court from ruling on the exhaustion issue because it is

ultimately a question for the jury.  (ECF No. 32, PageID.183).  But Plaintiffs misread and misapply that case.

In *Perttu*, the plaintiffs' complaint alleged that the defendant, a prison employee, threatened and retaliated against them because they had attempted to exhaust their administrative remedies against him for other alleged violations of their constitutional rights.  605 U.S. at 465.  The plaintiffs specifically claimed that the defendant ripped up their grievance forms, threw them away, threatened to kill them if they filed more, and retaliated against them in other ways.  *Id.* at 465–66.  The plaintiffs therefore claimed that the defendant's retaliation violated their First Amendment rights.  *Id.* at 466.  The defendant ultimately moved for summary judgment based on the plaintiffs' failure to exhaust their administrative remedies since there was no record of their grievances; the plaintiffs, in turn, argued that the defendant destroyed their grievances thereby rendering those remedies unavailable under the PLRA.  *Id.*  The magistrate judge held an evidentiary hearing on the matter, deemed the plaintiffs' witnesses lacked credibility, and recommended dismissal for failure to exhaust.  *Id.*  And the District Court adopted that recommendation.  *Id.*  On appeal, the Sixth Circuit reversed, holding that "the Seventh Amendment requires a jury trial when the resolution of the exhaustion issue under the PLRA would also resolve a genuine dispute of material fact

26

regarding the merits of the plaintiff's substantive case." *See Richards v. Perttu*, 96 F.4th 911, 923 (6th Cir. 2024).

When the Supreme Court assessed the Seventh Amendment issue, it concurred with the Sixth Circuit albeit on a different basis. Applying the constitutional avoidance canon, the Court resolved the issue as a matter of statutory interpretation without assessing what the Seventh Amendment required. *See Perttu*, 605 U.S. at 468. The Court held that "as a mater of statutory interpretation that parties have a right to a jury trial on PLRA exhaustion when that issue is intertwined with the merits of a claim that falls under the Seventh Amendment." *Id.* In other words, the resolution of the exhaustion issue—that is, whether the defendant destroyed the plaintiffs' grievances as a form of retaliation for past grievances—would ultimately resolve any issues of fact on the plaintiffs' First Amendment retaliation claim based on such conduct. The plaintiffs were therefore entitled to a jury trial on the exhaustion issue solely because they were also entitled to a jury trial on their First Amendment claim that involved preventing the plaintiffs from participating in the grievance process.

Plaintiffs here argue that *Perttu* stands for the proposition that a jury must resolve the exhaustion issue "when the substantial claim involves prison officials['] intentional misdirection about the grievance process to defeat a prisoner's attempt to exhaust." (ECF No. 32, PageID.183). But that is not what

27

the *Perttu* Court held.  For *Perttu* to apply, the question of exhaustion must be intertwined with Plaintiffs' substantive claims.  That is not the case here. Plaintiffs' claims are for Defendants' alleged infringement of their religious freedoms, improper handling and provision of rotting foods, malnourishment, and discriminatory treatment relative to prisoners of other faiths.  None of their claims are wrapped up in whether Plaintiffs exhausted their administrative remedies or whether those remedies were unavailable.  Thus, *Perttu* does not apply and does not excuse their failure to fully exhaust before filing their Complaint.

In sum, Plaintiffs did not fully exhaust their administrative remedies based on the face of the factual allegations in the Complaint.  And Plaintiffs have also not established that administrative remedies under MDOC policy were unavailable before they filed their Complaint on March 15, 2025.  Thus, Defendants' motion to dismiss for failure to fully exhaust under the PLRA should be granted.

## IV.    DEFENDANT JOHN DOE

The John Doe Defendant should also be dismissed from this action.  While Plaintiffs included John Doe in the caption to their Complaint, they did not include him under the section of their Complaint entitled "THE PARTIES."  (ECF No. 1, PageID.3–4, ¶¶ 9–17).  Since the Court granted Plaintiffs' applications to proceed *in forma pauperis*, the Court can, "at any time," review Plaintiffs' Complaint for failure to state a claim.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii).  The standard for failure

28

to state claim under § 1915(e)(2)(B)(ii) is the same as it is under Rule 12(b)(6). *See Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010); *Thomas-El v. Smith*, No. 23-1304, 2024 WL 1023749, at \*2 (6th Cir. Mar. 6, 2024).  Plaintiffs have not made any factual allegations that John Doe has violated their constitutional or statutory rights.  Accordingly, Plaintiffs have not plausibly stated a claim for relief or even satisfied Rule 8(a)'s general pleading requirement with respect to John Doe.

To go one step further, "it is not appropriate to file an action against 'John Doe Defendants' without alleging any particular facts about those defendants." *Checkpoint Sys., Inc. v. Castleton Enters., Inc.*, No. 5:10-CV-128, 2010 WL 1742104, at \*2 (N.D. Ohio Apr. 29, 2010) (collecting cases).  Consequently, John Doe should be dismissed.

## V.   RECOMMENDATION

Accordingly, it is the  **RECOMMENDATION** of the Magistrate Judge that Defendants' *Motion to Dismiss* (ECF No. 29) be **GRANTED**.  The undersigned further **RECOMMENDS** that the John Doe Defendant be **DISMISSED**.  If this Report and Recommendation is adopted, all further pending motions—such as Plaintiffs' *Motion for Appointment of Counsel* (ECF No. 39)—should also be denied as moot.

29

The parties here may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Tchrs Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections lack merit, it may rule without awaiting the response.

Date:  February 19, 2026.

s/Curtis Ivy, Jr.
Curtis Ivy, Jr.
United States Magistrate Judge

**<ins>CERTIFICATE OF SERVICE</ins>**

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on the February 19, 2026, by electronic means and/or ordinary mail.

s/Sara Krause
Case Manager
(810) 341-7850

31